CHAMPION GYM & FITNESS, INC. et al., Appellants,

v.

CROTTY, Appellee.

[Cite as *Champion Gym & Fitness, Inc. v. Crotty,*
178 Ohio App.3d 739, 2008-Ohio-5642.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 22209.

Decided Oct. 31, 2008.

Richard L. Carr Jr. and Sue Seeberger, for appellants.

Gretchen M. Treherne, for appellee.

WALTERS, Judge.

{¶ 1} Champion Gym & Fitness, Inc. and Larry Pacifico ("Champion") appeal from a judgment of the Montgomery County Common Pleas Court, granting summary judgment in favor of Kristie Crotty on Champion's complaint for breach of contract. Champion claims that the trial court erred in allowing Crotty to amend her answer to assert the affirmative defense of statute of frauds and that the trial court further erred in granting summary judgment to Crotty. Because we find that there are material issues of fact that would prevent the granting of summary judgment, we reverse the judgment of the trial court.

{¶ 2} In the spring of 2006, Crotty, a customer of Champion Gym & Fitness, became aware that Champion's principal owner, Larry Pacifico, desired to sell the gym. Thereafter, Crotty and Pacifico engaged in conversations discussing her potential purchase of the business. A part of these discussions was that any sale

would be contingent upon several conditions, including Crotty reaching an agreement with Champion's landlord regarding the lease of the premises where the gym was located.

{¶ 3} On July 4, 2006, Crotty signed a document that Champion refers to as a "commitment letter." This document contains, inter alia, the following: "I will have my attorney, Robert Schlemmer, negotiate with Hutchins Management for a new leasing rate/terms. I will then secure investment capital for improvements and operating expenses. If an agreeable amount is reached with Hutchins and the terms of Larry's buyout are agreed upon I will then deliver 10% of the requested upfront purchase amount by Wednesday, July 19, 2006. At this time we will proceed with final negotiations and have all documentation with agreed upon terms drawn up to conclude the sale of CHAMPIONS GYM and FITNESS in a timely manner."

{¶ 4} Concurrently with these events, Crotty and her attorney engaged in discussions with Hutchins Management regarding an assignment of the existing lease or the negotiation of a new lease for the gym premises. Champion's lease agreement prohibited the assignment of the lease without the express written consent of the landlord. At no time was any written agreement reached concerning either the assignment of the existing lease or a new lease between Crotty and the landlord. However, on August 23, 2006, Crotty sent a text message to her personal trainer that stated, "[O]ur terms 4 the lease were accepted."

{¶ 5} On July 19, 2006, Crotty paid Champion $4,000. Thereafter, on or about August 26, 2006, Crotty informed Champion that she was no longer interested in purchasing the business. Champion filed suit against Crotty, alleging that a contract for the purchase of the business had been reached and that Crotty had breached this agreement.

{¶ 6} Crotty filed a motion for summary judgment based upon the fact that any purported "contract" between the parties was at least subject to an unfulfilled contingency: the execution of a written assignment of the lease for the premises, approved by the landlord, or the execution of a new lease agreement. Champion responded with a purported text message between Crotty and an unrelated third party indicating that she had reached an agreement with the landlord. Thereafter, Crotty filed a motion to amend her answer to include the affirmative defense of statute of frauds.

{¶ 7} On June 1, 2007, the trial court granted Crotty's motion to amend her answer and also granted her summary-judgment motion, finding that no contract had been formed between Champion and Crotty. It is from this judgment that Champion appeals, setting forth two assignments of error for our consideration.

First Assignment of Error

{¶ 8} "The trial court erred in granting summary judgment in favor of Ms. Crotty."

{¶ 9} When reviewing a trial court's grant of summary judgment, an appellate court conducts a de novo review. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. "*De novo* review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Brewer v. Cleveland City Schools Bd. of Edn.* (1997), 122 Ohio App.3d 378, 383, 701 N.E.2d 1023, citing *Dupler v. Mansfield Journal Co.* (1980), 64 Ohio St.2d 116, 119–120, 18 O.O.3d 354, 413 N.E.2d 1187. Therefore, the trial court's decision is not granted any deference by the reviewing appellate court. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153.

{¶ 10} In this assignment, Champion argues first that the "commitment letter" constitutes an enforceable contract between the parties and that even if it did not, sufficient evidence existed to establish an oral contract between Champion and Crotty.

{¶ 11} In its most basic form, a contract is generally defined as "a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Minster Farmers Coop. Exchange Co., Inc. v. Meyer,* 117 Ohio St.3d 459, 2008-Ohio-1259, 884 N.E.2d 1056, at ¶ 28.

{¶ 12} A meeting of the minds as to the essential terms of the contract is a requirement for enforcing the contract. *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations* (1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134. "In order for a meeting of the minds to occur, both parties to an agreement must mutually assent to the substance of the exchange." *Miller v. Lindsay–Green, Inc.,* Franklin App. No. 04AP–848, 2005-Ohio-6366, 2005 WL 3220215, at ¶ 63. See also *Zelina v. Hillyer,* 165 Ohio App.3d 255, 2005-Ohio-5803, 846 N.E.2d 68, at ¶ 12 (stating that a meeting of the minds occurs if "a reasonable person would find that the parties manifested a present intention to be bound to an agreement"). The parties must have a distinct and common intention that is communicated by each party to the other. *McCarthy, Lebit, Crystal & Haiman Co., L.P.A. v. First Union Mgt., Inc.* (1993), 87 Ohio App.3d 613, 620, 622 N.E.2d 1093.

{¶ 13} In Ohio, an agreement to agree is not per se unenforceable. In *Normandy Place Assoc. v. Beyer* (1982), 2 Ohio St.3d 102, 105, 2 OBR 653, 443 N.E.2d 161, the Ohio Supreme Court stated:

{¶ 14} "It is thus not the law that an agreement to make an agreement is per se unenforceable. The enforceability of such an agreement depends rather on whether the parties have manifested an intention to be bound by its terms and whether these intentions are sufficiently definite to be specifically enforced."

{¶ 15} In this light, courts must give effect to the manifest intent of the parties when there is clear evidence demonstrating that the parties did not intend to be bound until the terms of the agreement are formalized in a signed, written document. See *Richard A. Berjian, D.O., Inc. v. Ohio Bell Tel. Co.* (1978), 54 Ohio St.2d 147, 151, 8 O.O.3d 149, 375 N.E.2d 410.

{¶ 16} The trial court herein based its decision upon the fact that the "agreement" referenced contained an essential precedent condition that the lease of the premises either be assigned to Crotty or a new lease negotiated prior to the formation of the agreement, and that it was uncontroverted that no written lease or assignment was ever entered into. The trial court further determined that such a writing was required by the statute of frauds, and absent any evidence of such a writing, the condition failed and no enforceable agreement was entered into between the parties. The trial court considered the text message from Crotty to her personal trainer that "our terms 4 the lease were accepted," but reasoned that this message was insufficient to satisfy the statute of frauds.

{¶ 17} Champion contends that the agreement that they are claiming was breached was not an agreement involving the transfer of an interest in real estate, but only involved the sale of the business.

{¶ 18} Ohio's statute of frauds is set forth in R.C. Chapter 1335. R.C. 1335.05 provides in pertinent part: "No action shall be brought whereby to charge * * * a person upon an agreement made upon consideration of * * * a contract or sale of lands, tenements or hereditaments, or interest in or concerning them * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized."

{¶ 19} It has been well said that "[t]his statute serves to ensure that transactions involving a transfer of realty interests are commemorated with sufficient solemnity. A signed writing provides greater assurance that the parties and the public can reliably know when such a transaction occurs. It supports the public policy favoring clarity in determining real estate interests and discourages indefinite or fraudulent claims about such interests." *N. Coast*

*Cookies, Inc. v. Sweet Temptations, Inc.* (1984), 16 Ohio App.3d 342, 348, 16 OBR 391, 476 N.E.2d 388.

{¶ 20} In *N. Coast Cookies,* a case concerning the purchase of the assets and the leasehold of a confectionary store, the Eighth District Court of Appeals held that the statute of frauds does not require that the parties' full agreement to transfer or enter into a lease be reduced to writing, and it does not concern the substance or form of such agreements. Rather, it mandates that some writing signed by the party sought to be held (or by that party's authorized agent) exist, so that the agreement's existence has sufficient certainty. Id. at 348–349, 16 OBR 391, 476 N.E.2d 388, citing *Ward v. Bickerstaff* (1946), 79 Ohio App. 362, 35 O.O. 129, 73 N.E.2d 877.

{¶ 21} In this case, the agreement alleged between Champion and Crotty involves the sale of assets similar to that involved in *N. Coast Cookies.* The difference between these two fact patterns is that in *N. Coast Cookies,* the agreement explicitly included the purchase and assignment of an existing lease agreement that the seller had with a third party. In contrast, the alleged agreement herein simply indicates that Crotty would negotiate directly with the lessor for a lease agreement and that she would deliver ten percent of the purchase price after reaching an acceptable lease agreement with the lessor.

{¶ 22} In discussing the applicability of the statute of frauds, the court in *N. Coast Cookies* mentioned a number of times that the agreement involved the transfer of a leasehold interest. Herein, the parties apparently did not agree to simply assign Champion's leasehold interest to Crotty; they simply indicated that the sale was contingent upon several conditions, including Crotty's ability to negotiate a new lease on terms satisfactory to her. This condition would bear upon whether the contract is enforceable. Crotty could claim that the contract failed because she could not obtain a new lease that was agreeable to her. Likewise, Champion can claim that the contract should be enforced because Crotty did reach a satisfactory lease agreement, as indicated by her text message and her payment of the ten percent down payment.

{¶ 23} In *Regan v. Paxton* (Feb. 1, 2002), Lucas App. No. L–01–1205, 2002 WL 126077, the parties entered into an agreement to form a business entity to own, renovate, manage, rent, lease, and dispose of certain real property that was to be auctioned. Pursuant to the agreement, the defendants purchased some property at the auction. The defendants then formed their own business entity to lease the properties, refusing to form the partnership with the plaintiffs. The trial court dismissed the complaint because the agreement regarding the formation of the partnership to purchase the buildings was not in writing and was therefore violative of the statute of frauds.

{¶ 24} The Sixth District Court of Appeals reviewed various cases involving oral partnerships formed for the purchase of real estate and noted that "it is clear that the distinguishing feature of those cases which apply the statute of frauds to the oral agreement at issue is the transfer or promise to transfer real property, already owned, from one partner to another or from one partner to the partnership." *Regan* at *5, citing *Gunsorek v. Heartland Bank* (1997), 124 Ohio App.3d 735, 744–745, 707 N.E.2d 557.

{¶ 25} In *Gunsorek*, the defendant owned real property that they orally agreed to contribute to a partnership and into which the plaintiff would contribute the capital necessary to develop the property into a shopping center. When the plaintiff approached the bank for financing, the bank offered to purchase the property at more than its listed value. The defendant then sold the property directly to the bank instead of forming the partnership and contributing the property to it. The plaintiff sued for breach of the oral partnership agreement. The Tenth District Court of Appeals found that the statute of frauds applied, because the "claim [was] not predicated simply on an agreement to share in profits from the future sale of property or to jointly purchase and develop land owned by third parties. Appellee's breach-of-contract claim is based upon appellant's failure to convey the real property to the partnership." Id. at 742, 707 N.E.2d 557.

{¶ 26} While these cases are not strictly on point, they are sufficiently analogous to apply herein. And, applying this reasoning to the present case, the statute of frauds could be relevant only if Champion had agreed to transfer its existing lease agreement to Crotty. However, it is Crotty who alleges that the agreement involved her negotiation of a new lease agreement with the landlord. This is borne out by her "commitment letter," which is the basis of Champion's claimed contract.

{¶ 27} For those reasons, the statute of frauds is inapplicable herein, and there are material issues of fact in dispute that need to be determined. The trial court should have overruled Crotty's summary-judgment motion.

{¶ 28} The first assignment of error is sustained.

### Second Assignment of Error

{¶ 29} "The trial court abused its discretion in permitting Ms. Crotty to amend her Answer after she had filed her Summary Judgment Motion."

{¶ 30} In this assignment of error, Champion contends that because Crotty failed to include the affirmative defense of statute of frauds in her original answer, she forever waived this defense and it was improper for the trial court to have considered this defense after the motion for summary judgment was filed.

Based upon our sustaining the first assignment of error, this assignment of error is moot.

{¶ 31} Nonetheless, we would point out that while the statute of frauds is an affirmative defense that must be pleaded pursuant to Civ.R. 8(C), leave of the trial court to amend a pleading, in order to include an affirmative defense previously overlooked, should be freely given pursuant to Civ.R. 15(A) to permit all the applicable facts and law to be raised so the case may be decided on its merits, unless the party opposing the amendment can establish that actual prejudice will result to him by allowance of the amendment. *Spies v. Gibson* (1982), 8 Ohio App.3d 213, 8 OBR 285, 456 N.E.2d 1284. Because the defense of statute of frauds is an affirmative defense listed in Civ.R. 8(C) and is not a defense that is waived under Civ.R. 12(H)(1), the trial court is permitted to grant leave to a defendant to amend her answer to include that defense, even though the time had elapsed within which the defendant could have amended her answer as a matter of course. And, "[t]he granting of a motion for leave to amend a pleading shall not be disturbed on appeal absent a showing of bad faith, undue delay or undue prejudice to the opposing party." *Hoover v. Sumlin* (1984), 12 Ohio St.3d 1, 12 OBR 1, 465 N.E.2d 377, at paragraph two of the syllabus. Because there has been no showing by Champion of bad faith, undue delay, or actual prejudice resulting from the amendment, we are unable to say that the trial court abused its discretion in applying the liberal amendment provision of Civ.R. 15(A). In fact, the trial court might well have abused its discretion had it not permitted the amendment. See *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 63 O.O.2d 262, 297 N.E.2d 113, at paragraph six of the syllabus.

{¶ 32} Appellant's second assignment of error is overruled.

{¶ 33} The judgment of the Montgomery County Common Pleas Court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

FAIN and GRADY, JJ., concur.

SUMNER E. WALTERS, J., retired, of the Third District Court of Appeals, sitting by assignment.