[Cite as *PNC Mtge. v. Guenther*, 2013-Ohio-3044.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY   COUNTY**

| | | |
|---|---|---|
| PNC MORTGAGE, a division of | : | |
| PNC Bank National Association | : | Appellate Case No. 25385 |
| | : | |
| Plaintiff-Appellee | : | Trial Court Case No. 2010-CV-5706 |
| | : | |
| v. | : | |
| | : | (Civil Appeal from |
| CHERYL L. GUENTHER, et al. | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 12th day of July, 2013.

. . . . . . . . . . .

ANTHONY L. OSTERLUND, Atty. Reg. #0071086, and J.B. LIND, Atty. Reg. #0083310, Vorys, Sater, Seymour and Pease LLP, 301 East Fourth Street, Suite 3500, Great American Tower, Cincinnati, Ohio 45202
        Attorneys for Plaintiff-Appellee, PNC Mortgage


WORRELL A. REID, Atty. Reg. #0059620, 6718 Loop, #2, Centerville, Ohio 45459
        Attorney for Defendant-Appellants, Cheryl Guenther and Deanne Gerhardt

DOUGLAS TROUT, Atty. Reg. #0072027, Montgomery County Prosecutor's Office, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Montgomery County Treasurer

. . . . . . . . . . . . .

HALL, J.,

{¶ 1} In this foreclosure case, the mortgage company moved to enforce a settlement agreement that was negotiated by the parties' attorneys and reduced to writing but never signed. A magistrate held an evidentiary hearing and decided that the agreement should be enforced. A retired judge, sitting for the trial judge originally assigned to the case, reviewed the magistrate's decision and adopted it and the magistrate's findings of fact and conclusions of law.

{¶ 2} The property owners contend that the agreement is not enforceable because their attorney did not have the authority to enter the agreement and because they never signed a writing of it. But they failed to file a transcript of the magistrate's hearing. So we must simply accept the trial court's factual finding that the property owners' attorney had the necessary authority and the court's finding that the parties did not intend to make signing a condition precedent to enforcement. The property owners also contend that the trial court's order is voidable and void because it was not decided and signed by the judge originally assigned to the case. A certificate of assignment from the chief justice of the Ohio Supreme Court establishes the retired judge's authority to decide and sign the order.

{¶ 3} The trial court's order is affirmed.

## I. The Facts

{¶ 4} In July 2010, PNC Mortgage filed a complaint in foreclosure against Cheryl L. Guenther and Deanne L. Gerhardt and others.[1] The parties tried to settle the case through

---

[1] The others are not involved in this appeal.

informal mediation. In December 2011, though no notice of settlement had been filed with the trial court, PNC moved to enforce a settlement agreement that it claimed the parties had entered. Guenther and Gerhardt opposed, arguing that the settlement agreement is not enforceable. They contended that their attorney, Worrell Reid, did not have authority to enter into or approve the agreement and that the agreement was not final. Guenther and Gerhardt also contended that signing a writing of the settlement agreement is a condition precedent to its enforceability and they never signed anything. Both sides filed supporting affidavits.

{¶ 5}　The matter was referred to a magistrate. The magistrate held an evidentiary hearing at which Reid and Gerhardt testified. Based on the affidavits and hearing testimony, the magistrate determined that Guenther and Gerhardt's attorney had authority to settle the case on the terms in the settlement agreement. The magistrate also concluded that, despite the fact that Guenther and Gerhardt did not sign the written agreement, an enforceable settlement agreement exists between the parties. With respect to the agreement, the magistrate made these findings:

> The Settlement Agreement contain[s] provisions under which (1) [PNC] would accept a reduced claim and would waive certain foreclosure related fees and costs; (2) [Guenther and Gerhardt] would acknowledge their debt and bring their mortgage current; and (3) that all claims and counterclaims would be dismissed with prejudice. The agreement was discussed in e-mails between counsel for the parties and final terms agreed upon between counsel. Mr. Reid represented that "I should have [the Agreement, as modified by their discussions] signed and mailed within 24 hours." Mr. Osterlund[, PNC's attorney,] then forwarded the revised Settlement Agreement with the negotiated terms to Mr. Reid on November 9,

2011 for signature. The correspondence between counsel for the parties evidences a meeting of the minds. Mr. Reid offered that his clients would get the funds by November 15th and that the agreement "should" be signed and mailed back to Mr. Osterlund within 24 hours of receipt. The offer was accepted by [PNC], via Mr. Osterlund, on November 9, 2011, when he forwarded the revised Settlement Agreement to Mr. Reid. At this point in time both parties agreed upon the terms contained in the writing. Ms. Gerhardt acknowledged that, at this point in time, she was aware of the state of negotiations and she did plan to pay the arrearage of around $19,000.00, along with a monthly payment of $1,079.00. Accordingly, despite the fact that the document itself was not yet signed by the parties, there was a binding and enforceable settlement agreement between the parties on November 9, 2011.

(Magistrate's Decision, 9-10). The magistrate believed that, "after entering into the agreement through counsel, [Guenther and Gerhardt] experienced financial difficulties (due to unexpected medical expenses) and had a change of heart regarding the agreement." (*Id*. at 10).

{¶ 6} Guenther and Gerhardt filed objections to the magistrate's decision with the judge originally assigned to the case, Judge Price. But in September 2012, it was Judge Wolff, a retired judge, who overruled their objections and adopted the magistrate's decision and findings of fact and conclusions of law, sustaining PNC's motion to enforce.

{¶ 7} Guenther and Gerhardt appealed.

## II. The Enforceability of the Settlement Agreement

{¶ 8} The first assignment of error alleges that the trial court erred in enforcing the

settlement agreement. Guenther and Gerhardt argue that the settlement agreement is unenforceable because their attorney did not have the authority to bind them and because they did not sign the agreement. We review a trial court's decision to adopt a magistrate's decision under an abuse-of-discretion standard. *Lincoln v. Callos Mgt. Co.*, 2d Dist. Montgomery No. 23848, 2010-Ohio-4921, ¶ 6. Under this standard, we reverse only "where it appears that the trial court's actions were arbitrary or unreasonable." (Citation omitted.) *Id*. But a ruling on a motion to enforce a settlement agreement also raises questions of contract law. These issues are questions of law, which we review de novo. *Fed. Natl Mtge. Assn v. Fletcher*, 2d Dist. Miami No. 2010 CA 8, 2010-Ohio-3768, ¶ 12; *In re All Kelley & Ferraro Asbestos Cases*, 104 Ohio St.3d 605, 2004-Ohio-7104, 821 N.E.2d 159, ¶ 28 (saying that "the construction of a written contract is a question of law, which we review de novo").

### A. The absent transcript

{¶ 9} There is a preliminary issue here that we must address first. Appellate Rule 9 provides that "[i]f the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the weight of the evidence, the appellant shall include in the record a transcript of *all* evidence relevant to the findings or conclusion." (Emphasis added.) App.R. 9(B)(4). Or, if no record was made from which a transcript can be made, either the appellant may prepare and file a statement of the evidence or the parties may prepare and file an agreed statement of the record. App.R. 9(B)(4), citing App.R. 9(C) and (D); *Ott v. Reynolds*, 2d Dist. Montgomery No. 20076, 2004-Ohio-2733, ¶ 3.

{¶ 10} The record before us does not contain a transcript of the proceedings before the magistrate or either of the transcript substitutes. For this reason, we cannot review any challenges

to the sufficiency or weight of the evidence on the issue of enforceability. *Compare Ott* at ¶ 2 (saying that without a transcript of the proceedings before the magistrate the court could not review "the weight and meaning of the evidence presented in the trial court's proceedings concerning the intentions of the parties with respect to what their respective rights and duties would be when they entered into their contract"). "[A]bsent a transcript or other record of the evidence before the magistrate, we cannot determine whether the trial court erred when it adopted the magistrate's decision." *Id.* at ¶ 5. "[W]e can only presume the validity of the trial court's proceedings * * *." *Id.*, citing *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 400 N.E.2d 384 (1980). This means that, in our review here, we must simply accept the findings of fact as correct.

### B. The attorney's authority

{¶ 11}  Guenther and Gerhardt contend that their attorney did not have the authority to bind them to the settlement agreement. Rather, they say, the role of their attorney was merely to help them in reaching an agreement.

{¶ 12}  "'Absent specific authorization, an attorney has no implied or apparent authority to compromise and settle his client's claims.'" *Schalmo Builders, Inc. v. Zama*, 8th Dist. Cuyahoga No. 90782, 2008-Ohio-5879, ¶ 17, quoting *Garrison v. Daytonian Hotel*, 105 Ohio App.3d 322, 326, 663 N.E.2d 1316_(2d Dist. 1995). Merely retaining an attorney does not give the attorney settlement authority. *Id*. "[A]ttorneys who enter into settlement agreements must have actual authority to enter into the agreement." (Citation omitted.) *Berry Network, Inc. v. United Propane Gas, Inc.*, 2d Dist. Montgomery No. 22875, 2009-Ohio-2537, ¶ 29. "Whether a party authorized the attorney to settle the case on certain terms is a question of fact * * *."

(Citation omitted.) *Schalmo Builders* at ¶ 17.

**{¶ 13}**   The magistrate here concluded that Guenther and Gerhardt's attorney, Mr. Reid, had both actual and apparent authority to settle the case. On the issue of actual authority:

> The Magistrate d[oes] not find Ms. Gerhardt's or Mr. Reid's testimony convincing on the issue of whether Mr. Reid had authority to negotiate and reach a settlement on behalf of [Guenther and Gerhardt]. Throughout the negotiations process, Mr. Reid failed to indicate that his authority was limited or that he needed to obtain the approval of his clients before agreeing to the terms of the deal. * * * Accordingly, the Magistrate finds it more likely than not that Mr. Reid had actual authority to negotiate a settlement and to bind [the appellants] to its terms.

(Magistrate's Decision, 11-12). On the issue of apparent authority:

> Assuming, arguendo, that Mr. Reid did not have actual authority to bind his clients, he certainly had apparent authority to do so and [Guenther and Gerhardt] are bound by his actions. * * *
>
> * * * [Guenther and Gerhardt] and Mr. Reid represented to [PNC]'s counsel by their actions that Mr. Reid had the authority to act on [Guenther and Gerhardt's] behalf, including negotiating a binding settlement agreement. It would be unjust to [PNC] to allow [Guenther and Gerhardt] to circumvent the settlement agreement after [PNC] relied upon the representations that Mr. Reid had the authority to enter into the agreement. [Guenther and Gerhardt] must accept the actions of their attorney and abide by the terms of the settlement agreement. If [Guenther and Gerhardt] believe that Mr. Reid overstepped his authority by

entering into the binding settlement agreement on their behalf, as the *Lepole* Court stated, their "remedy lies elsewhere." [*Lepole v. Long John Silver's*, 11th Dist. Portage No. 2003-P-0020, 2003-Ohio-7198, ¶ 16.]

(*Id*. at 12).

{¶ 14}   Because the authority of Guenther and Gerhardt's attorney is a question of fact, we accept the magistrate's finding–adopted by the trial court–that the attorney had the authority to settle the case on the terms in the agreement.

### C. The existence of a contract

{¶ 15}   Guenther and Gerhardt contend that the settlement agreement also is not binding because signing a writing of the agreement is a condition precedent to enforcement and they did not sign anything. A signed writing is not necessary to a settlement contract:

"An agreement to make a written agreement, the terms of which are mutually understood and agreed upon, is in all respects as valid and obligatory as the written contract itself would be if executed. The mere fact that parties who have reached a verbal agreement also have agreed to reduce their contract to writing does not prevent the agreement from being a contract if the writing is not made."

*Union Sav. Bank v. White Family Cos., Inc.*, 183 Ohio App.3d 174, 2009-Ohio-2075, 916 N.E.2d 816, ¶ 26 (2d Dist.), quoting 17 Ohio Jurisprudence 3d, Contracts, Section 68. It is only "'where the parties intend that there be no contract until the agreement is reduced to writing and signed, or that the contract is to be reduced to writing and signed before the agreement is finally consummated'" that "'no contract exists when the written agreement is neither signed nor approved by one of the parties.'" *Id.*, quoting 17 Ohio Jurisprudence 3d, Contracts, Section 68;

*see Champion Gym & Fitness, Inc. v. Crotty*, 178 Ohio App.3d 739, 2008-Ohio-5642, 900 N.E.2d 231, ¶ 15 (2d Dist.) (saying that "courts must give effect to the manifest intent of the parties when there is clear evidence demonstrating that the parties did not intend to be bound until the terms of the agreement are formalized in a signed, written document"), citing *Richard A. Berjian, D. O., Inc. v. Ohio Bell Tel. Co.*, 54 Ohio St.2d 147, 152, 375 N.E.2d 410 (1978) (considering the issue of whether the provisions of an agreement were enforceable when one party did not formally express his acceptance by signing the agreement and saying that "simply because the customer did not signify his acceptance by executing the agreement does not necessarily result in its unenforceability").

{¶ 16}   The magistrate here found no such intent:

[T]he Magistrate finds that the parties had agreed on all terms of the settlement agreement no later than November 9, 2011 and that there was a meeting of the minds regarding the terms. Nothing in the writing itself states that the agreement is not enforceable unless it is signed by the parties. Additionally, nothing during the course of settlement negotiations between Mr. Reid and Mr. Osterlund indicates that counsel contemplated that signatures were required to make the agreement enforceable. Additionally, the Magistrate notes that [Guenther and Gerhardt] had made preparations to carry out the terms of the agreement, obtaining the approximately $19,000.00 to bring the loan current.

(Magistrate's Decision, at 10).

{¶ 17}   The question of the parties' intent is also one of fact. *See Union Sav. Bank* at ¶ 27 (saying that where there are "questions regarding the intentions of the parties concerning the

finality of their oral settlement agreement that must be resolved if the oral agreement is to be enforced," including whether the parties intended that there would be "no [settlement] contract until their oral agreement was reduced to writing or that their contract would be reduced to writing and signed before the agreement is finally consummated," a trial court should hold an evidentiary hearing), citing *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58. So we accept the magistrate's finding–adopted by the trial court–that the parties intended to be bound without a signed writing.

{¶ 18} Given the facts, the trial court correctly concluded that the settlement agreement is enforceable.

{¶ 19} The first assignment of error is overruled.

### III. The Judge's Authority

{¶ 20} The second assignment of error alleges that the order adopting the magistrate's decision and sustaining PNC's motion to enforce is voidable because it was not prepared and signed by the trial judge originally assigned to the case. Guenther and Gerhardt contend that Judge Wolff's signing the entry violated Civ.R. 58. The third assignment of error alleges that the order is void because Judge Wolff's appointment violated Sections 1 and 4 of Article IV of the Ohio Constitution and violated the due process clause of the Fourteenth Amendment to the U.S. Constitution.

{¶ 21} "It is well settled that the act of appointing a visiting judge to hear a case is not unconstitutional." *Seaford v. Norfolk S. Ry. Co.*, 159 Ohio App.3d 374, 2004-Ohio-6849, 824 N.E.2d 94, ¶ 15 (8th Dist.), *rev'd on other grounds*, 106 Ohio St.3d 430, 2005-Ohio-5407, 835 N.E.2d 717, citing *Pocker v. Brown*, 819 F.2d 148, 149 (6th Cir.1987) (finding no

federal-constitution violation); *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28, 30-31, 451 N.E.2d 225 (1983) (finding no state-constitution violation). The Ohio Constitution and the Rules of Superintendence allow for the temporary assignment of a visiting judge to handle and conclude any proceedings occurring in the court during the period of assignment. *Forsyth v. Feinstein*, 2d Dist. Clark No. 99-CA-66, 2000 WL 192298, *2 (Feb. 18, 2000), citing Section 5(A)(3), Art. IV, Ohio Constitution, and Sup.R. 4(B)(6). Moreover, a local rule provides that "[w]hen a Judge is not available, arrangements may be made by that Judge or by the Administrative Judge for another member of the Court to handle urgent matters or sign entries." Mont. Co. C. P. R. 1.19(II)(A)(1)(g).

**{¶ 22}** Here, the administrative and presiding judge of the Montgomery County Common Pleas Court asked the chief justice of the Ohio Supreme Court to assign another judge to active duty. The chief justice assigned Judge Wolff, a retired judge, to serve in the court from September to November 2012. The assignment information is available on the Supreme Court's website.[2] A copy of the certificate of assignment is attached to PNC's brief, and we sua sponte add it to the record, App.R. 9(E). The certificate establishes that Judge Wolff had the authority to handle any proceedings in the trial court for the assignment period, and therefore, Judge Wolff had the authority to decide and sign the appealed order. *Compare Ward v. NationsBanc Mtge. Corp.*, 6th Dist. Erie No. E-05-040, 2006-Ohio-2766 (holding the same after supplementing the record with the certificate of assignment).[3]

---

[2]The Supreme Court of Ohio, Judge Assignment Search, http://www.sconet.state.oh.us/judgeassignmentsearch/ (accessed May 31, 2013) (assignment number 12JA1906).

[3]It appears the guidelines in the Supreme Court's *Guidelines for Assignment of Judges*, available at http://www.sconet.state.oh.us/JCS/judicialAssignment/default.asp (accessed May 31, 2013), were not all followed with respect to Judge

**{¶ 23}** The second and third assignments of error are overruled.

**{¶ 24}** The trial court's order is affirmed.

. . . . . . . . . . . .

DONOVAN and WELBAUM, JJ., concur.

Copies mailed to:

Anthony L. Osterlund
J.B. Lind
Worrell A. Reid
Douglas Trout
Hon. Michael Krumholtz

---

Wolff's assignment: a copy of the certificate of assignment should have been filed with the clerk of the court and entered on the court's miscellaneous journal, Guideline 5.1(B); a copy of the certificate should have been placed in this case's file, *id.*; counsel should have been notified of the assignment, Guideline 5.3(A). But "these guidelines are not binding on Ohio courts." *Forsyth* at *3; see *Ward* at ¶ 22 (saying that "the guidelines are not mandatory"). "The guidelines have not been adopted as rules * * *." *Ward* at ¶ 22. So "failure to abide by them cannot be construed as a fatal or reversible act of the trial court." *Id.*; *see Forsyth* at *3 (saying that the failure to follow a guideline "is not reversible error").