[Cite as *Cooper v. City of West Carrollton, Ohio*, 2018-Ohio-2547.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| TROY COOPER | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 27789 |
| | : | |
| v. | : | Trial Court Case No. 2016-CV-6126 |
| | : | |
| CITY OF WEST CARROLLTON, OHIO | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 29th day of June, 2018.

. . . . . . . . . . .

DAVID M. DUWEL, Atty. Reg. No. 0029583, 130 West Second Street, Suite 2101, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellant

TIMOTHY G. PEPPER, Atty. Reg. No. 0071076, 40 North Main Street, Suite 1700, Dayton, Ohio 45423
    Attorney for Defendant-Appellee

. . . . . . . . . . . . .

WELBAUM, P.J.

**{¶ 1}** This case is before us on appeal of Plaintiff-Appellant, Troy Cooper, from a summary judgment rendered in favor of Defendant-Appellee, City of West Carrollton, Ohio ("City"). As a ground for his appeal, Cooper contends that the trial court erred in dismissing his breach of contract claim. He also argues that the trial court erred in concluding that the statute of limitations expired with respect to his contract claims. For the reasons set forth below, we find Cooper's assignments of error without merit. Accordingly, the judgment of the trial court will be affirmed.

I.   Facts and Course of Proceedings

**{¶ 2}** On December 2, 2016, Cooper filed a complaint against the City, alleging three causes of action: breach of contract, breach of implied contract, and promissory estoppel. The case was a refiling of a prior action that Cooper had filed against the City on June 1, 2015, and had dismissed without prejudice on December 4, 2015.

**{¶ 3}** Cooper's claims arose from his employment with the City. Cooper began part-time employment with the City's Parks and Recreation Department ("Parks Dept.") in 1980, when he was still in high school. Right after he graduated from high school in 1985, Cooper began full-time employment with the Parks Dept. as a Maintenance Repair Person I.[1]   At that time, Cooper reported to Dixon Chaney, who was the supervisor of the Parks Dept.

**{¶ 4}** Cooper was employed continuously in the Parks Dept. until he retired on April

---

[1] The dates in this paragraph with respect to Cooper's high school attendance reflect the evidence in the record, but we note that they appear to span more than four years.

26, 2016. During his employment, Cooper belonged to a union, the West Carrollton Independent Employees Association ("Union"). At all pertinent times, the Union had a contract with the City that protected Union members.

{¶ 5} When Cooper was hired, there was no Maintenance II position; however, at some point, a Maintenance II position was created, and in 1998, Cooper was promoted to the position. Cooper applied for this position, which was competitive, and was chosen over another person who had also applied. Cooper continued in the Maintenance II position until he retired in 2016.

{¶ 6} Chaney continued to be Cooper's supervisor and retired on January 1, 2008. At that time, Cooper was acting supervisor because Chaney took a lot of vacation right before he retired. The Union contract allowed employees to receive a "plus rating to a supervisory position," and be paid a higher rate, which was calculated as an 8% increase from the employee's current hourly rate. This could be approved by the Department Director, on an as-needed basis and was solely at the director's discretion. Pursuant to this paragraph of the contract, Cooper was given an 8% increase in his hourly rate when he became acting supervisor, while still retaining his Maintenance II classification and Union membership. Cooper Deposition, pp. 71-72 and 77-78, and Union contract, Article IV, Section 3, p. 12 (attached as Ex. B to Cooper's Deposition, and hereafter referenced as "Contract").[2]

{¶ 7} At all relevant times, Christian Mattingly was the Director of the Parks Dept. and Brad Townsend was the City Manager. When Chaney retired, the City did not

---

[2] This contract was effective from November 10, 2011, to November 10, 2013, but neither side has noted any relevant differences between this and other Union contracts that were in effect during Cooper's employment.

publicly post the supervisor's position and did not establish a list of eligible candidates. Cooper also did not apply for the supervisor's position.

{¶ 8} Around January 25, 2008, Townsend and Cooper had a brief meeting, during which Townsend offered Cooper the position of supervisor of the Parks Dept. Because Cooper had previously spoken to Mattingly about a potential promotion, Cooper anticipated that he would receive an offer at the meeting. As a result, Cooper had prepared a letter requesting a guaranteed employment contract. *See* Ex. C attached to Cooper's Deposition.

{¶ 9} The letter, which was dated January 25, 2008, stated, in pertinent part, as follows:

> In order for me to accept the Parks and Recreation, Supervisor Position and leave the security of my current position as Maintenance Repair Person, I need to ask that this letter or some other legal agreement be signed by the City of West Carrollton and myself, guaranteeing me the opportunity to fall back in my current title and keep my seniority, in the event of cutbacks, Layoffs, or you find that my performance isn't satisfactory, or for any other reasons deemed necessary until my retirement is up November 2013.

Ex. C at p. 1.

{¶ 10} When Cooper wrote this letter, he was aware that supervisors did not have job security because they were not in the Union. In contrast, as a Union member, Cooper had seniority rights, including bumping rights; thus, if layoffs occurred, employees junior to Cooper would generally be laid off first. Cooper Deposition at p. 60. When Cooper

wrote the letter, he was unaware of any other City employee who had ever received such a contract. *Id.* at pp. 61-62.

{¶ 11} Townsend read Cooper's letter during the meeting and told Cooper that the City did not enter into employment contracts. Doc. #32, City's Motion for Summary Judgment, Affidavit of Brad Townsend, ¶ 7; Cooper Deposition at p. 63. When Townsend made this statement, Cooper told Townsend he would get back with him. *Id.* at p. 63. Cooper did not recall what Townsend said after that. However, Cooper thought that Townsend was not very happy with the letter. Apparently, during the meeting, Cooper also brought up the fact that, as City Manager, Townsend had a contract. Cooper concluded that Townsend did not like this reference. *Id.* at p. 64.

{¶ 12} Mattingly did not have authority to promote Cooper; he only could make recommendations to Townsend. A few days after the meeting, Cooper told Mattingly he would accept the job basically without a contract. According to Cooper, Mattingly said "great, he'll let [Townsend] know."[3] Cooper Deposition at p. 66. No further discussion occurred, including what Cooper's salary would be. Cooper indicated that the supervisor position had a range of salaries, from low to high. *Id.* at p. 90.

{¶ 13} While acting in both the acting supervisor capacity and what Cooper thought was his new position as "supervisor," Cooper performed his usual duties as a Maintenance II worker, but also performed other duties. After being promoted, Cooper

---

[3] A factual dispute exists in this context, as both Mattingly and Townsend stated that Cooper had declined the position. *See* Doc. #32, Mattingly Affidavit, ¶ 8, and Townsend Affidavit at ¶ 8. According to Townsend, Cooper decided to stay in his current classification and receive the 8% salary increase, while staying under Union protection. *Id.* For reasons that will become clear in our discussion, this is not a material factual dispute.

prepared monthly reports for Mattingly about the department's activities and assigned work to other employees. Cooper also helped Mattingly with the budget by making recommendations about needed equipment and obtaining prices.

{¶ 14} When Cooper received the promotion, he expected that his pay rate would change and that he would receive supervisor pay rather than the rate for Maintenance II, plus 8%. However, after receiving a few paychecks, Cooper noticed that he was not being paid any more than before his promotion. Cooper Deposition at pp. 75-76. In 2008, a few months after becoming supervisor, Cooper discussed the issue with Mattingly, who said he would "get with" Brad Townsend and look into it. Mattingly did not get back to Cooper with an answer, however.

{¶ 15} After that, Cooper asked about the issue several times a year, although he did not specify exactly when he asked. He said that in one incident he could recall, which he thought was in 2008, Mattingly said, "you turned down the job." *Id.* at p. 82.

{¶ 16} About four or five years later, Cooper demanded to talk to Townsend. Cooper had tried to talk to Townsend several times, but Townsend was not available. On this occasion, Townsend basically laughed at Cooper and said, "you've been doing it for four or five years, how do you expect me to take it to council?" *Id.* at p. 83.

{¶ 17} In 1982, the City adopted personnel rules and regulations. *See* Ex. D. (City of West Carrollton Personnel Rules and Regulations) ("Personnel Rules"), attached to the Cooper Deposition. Rule XII provides for a grievance procedure "through which all City employees may have an opportunity to have their problems and complaints considered in a fair and reasonable manner." Personnel Rules at p. 61, Section 12.01.

{¶ 18} Rule XII defines a grievance as a dispute based on one or more of the

following items: "1. The lack of a clearly defined City or Department Policy; 2. The existence of a policy which is unfair or discriminatory to a specific group of employees; 3. The deviation from established policy; [and] 4. The improper application of the rules, regulations or policies of the City." *Id.* at p. 61, Section 12.03. Employees initiate the process by filing grievances in writing with their supervisors within 10 days of when they "knew or should have known of the event on which the grievance is based." *Id.* at p. 62, Section 12.04. A three-level process, including appeals, is involved, ending with the City Manager's decision on the subject. *Id.* at pp. 62-63, Sections 12.04-12.05. Cooper testified that any full-time employee would know the rules and regulations, and that this was a general obligation of City employees. Cooper Deposition at pp. 92-93.

**{¶ 19}** During his deposition and in interrogatory answers, Cooper claimed that the City violated Section 6.10 of the Personnel Rules, which stated that:

A. Whenever a vacancy occurs in the civil service of the City and there is no current eligible list from which a certification can be made, the Personnel Director shall so inform the appropriate Department Head. If, in the judgment of the Department Head, it is not expedient to wait until the establishment of a list, he shall request the Personnel Director to submit to him the application(s) of one or more persons who possess the minimum qualifications established for the position. Upon review of the applications, the Department Head may recommend to the City Manager the appointment of one of the candidates. Upon approval by the City Manager, the appointment shall become official.

B. A provisional appointment shall not last longer than three

months, during which time an examination shall be given and an eligible list established. The name of the provisional candidate shall be certified to the Department Head along with the names of the top five candidates on the eligible list, provided that the provisional employee receives a passing score on the examination. The probationary service of a provisional employee may be shortened by the length of time spent in a provisional status.

Ex. D, Personnel Rules, at p. 21.

{¶ 20} Both Townsend and Mattingly testified that Cooper was not a provisional appointee and was not given a test for provisional appointees; Cooper did not present contrary evidence. In fact, Cooper said that supervisory positons do not have to be posted. Cooper Deposition at p. 53. Cooper also stated that apparently Townsend considered him a provisional appointee because he paid Cooper less, but Cooper did not consider himself as such; he considered himself to have been actually appointed to the position of supervisor. *Id.* at p. 104. In any event, Cooper never said that he ever filed any grievances concerning his appointment or pay.

{¶ 21} The Union contract also contained grievance, mediation, and arbitration procedures. *See* Cooper Deposition, Ex. B, Contract, Article 8, at pp. 5-8. Again, Cooper failed to provide any evidence of attempts to use any grievance or other procedures contained in any Union contracts.

{¶ 22} As was noted, Cooper filed an initial complaint against the City in June 2015, dismissed it without prejudice, and refiled in December 2016. In February 2017, the City filed a Civ.R. 12(C) motion to dismiss, contending that Cooper's claims for promissory estoppel and implied contract were barred by the statute of limitations. The

City further argued that Cooper's breach of contract action, which was allegedly based on Section 6.10 of the City's personnel rules, failed to state a claim because there was no meeting of the minds.

{¶ 23} On March 30, 2017, the trial court sustained the City's motion to dismiss in part, and denied it in part. The court concluded that the statute of limitations for the promissory estoppel and implied contract claims expired in early to mid-2014, well before the initial complaint was filed. However, the court overruled the motion to dismiss the contract claim. The court noted the City's argument that Cooper had not offered any evidence about the meeting of the parties' minds, but stressed that it could not consider evidence outside the pleadings.

{¶ 24} Subsequently, on August 8, 2017, the City filed a motion for summary judgment with respect to the remaining claim. In support of its motion, the City filed affidavits from Townsend and Mattingly, as well as Cooper's deposition and the exhibits identified at the deposition. On September 29, 2017, the trial court sustained the City's motion for summary judgment and dismissed the case. Cooper then filed a timely appeal of the court's decision.

II. Breach of Contract Claim

{¶ 25} Cooper's First Assignment of Error states that:

The Trial Court Erred When It Dismissed Appellant's Breach of Contract Claim.

{¶ 26} In granting summary judgment on the contract claim, the trial court first held that the matter involved an oral contract because no evidence of a written contract was

provided. The court further concluded that there was no evidence of a meeting of minds. While the court concluded that some sort of agreement existed, the terms were not evident, and there was no evidence of mutual assent to any of the material pay terms. As a result, the court held that the contract was not enforceable because it was indefinite as of its making and was not binding on the parties.

{¶ 27} In arguing that the trial court erred, Cooper contends that he was orally offered the position of supervisor and orally accepted the offer. According to Cooper, a meeting of the parties' minds took place for purpose of contract formation because his job duties changed after his acceptance of the offer, including that he provided monthly reports about the department's activity, presented budget items to Mattingly, attended meetings and seminars scheduled for City supervisors, was paid by the City for the use of his cell phone, responded to City emergencies, set daily work schedules for the department, and hired and fired seasonal employees.

{¶ 28} Before addressing these points, we note that "[a] trial court may grant a moving party summary judgment pursuant to Civ. R. 56 if there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor." *Smith v. Five Rivers MetroParks*, 134 Ohio App.3d 754, 760, 732 N.E.2d 422 (2d Dist.1999), citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 375 N.E.2d 46 (1978). "We review decisions granting summary judgment de novo, which means that we apply the same standards as the trial court." *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, ¶ 16 (2d Dist.).

{¶ 29} As the trial court observed, the alleged agreement in this case was oral, as there is no evidence of any writing. Courts may enforce oral agreements if the terms " 'can be established by clear and convincing evidence.' " *Clemens v. Clemens*, 2d Dist. Greene No. 07-CA-73, 2008-Ohio-4730, ¶ 93, quoting *Pawlowski v. Pawlowski*, 83 Ohio App.3d 794, 798-799, 615 N.E.2d 1071 (10th Dist. 1992). The party asserting the existence of such an agreement also has the burden of proof. *Id.* at ¶ 102.

{¶ 30} " 'A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.' " *Kostelnik v. Helper*, 96 Ohio St. 3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16, quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F. Supp. 409, 414 (N.D.Ohio 1976). "A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Id.*, citing *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369, 575 N.E.2d 134 (1991). " 'In order for a meeting of the minds to occur, both parties to an agreement must mutually assent to the substance of the exchange.' " *Champion Gym & Fitness, Inc. v. Crotty*, 178 Ohio App.3d 739, 2008-Ohio-5642, 900 N.E.2d 231, ¶ 12 (2d Dist.), quoting *Miller v. Lindsay-Green, Inc.*, 10th Dist. Franklin No. 04AP-848, 2005-Ohio-6366, ¶ 63.

{¶ 31} The Supreme Court of Ohio has stressed that:

A court cannot enforce a contract unless it can determine what it is. It is not enough that the parties think that they have made a contract. They must have expressed their intentions in a manner that is capable of being

understood. It is not even enough that they had actually agreed, if their expressions, when interpreted in the light of accompanying factors and circumstances, are not such that the court can determine what the terms of that agreement are. Vagueness of expression, indefiniteness and uncertainty as to any of the essential terms of an agreement, have often been held to prevent the creation of an enforceable contract.

*Rulli v. Fan Co.*, 79 Ohio St.3d 374, 376, 683 N.E.2d 337 (1997), quoting 1 Corbin on Contracts 525, Section 4.1 (Rev. Ed. 1993).

{¶ 32} Assuming for the sake of argument that the parties had agreed for Cooper to be considered a supervisor, the terms of their agreement would have been insufficient for purposes of either determining if a breach occurred or the appropriate remedy to be provided. *See Nilavar v. Osborn*, 127 Ohio App.3d 1, 13, 711 N.E.2d 726 (2d Dist.1998). Specifically, a range of salaries existed for the supervisor's position, and the parties did not discuss a salary. During his deposition, Cooper speculated about what his starting salary might have been, by stating that he expected it would be "about middle ways"; however, even this is indefinite. Cooper Deposition at p. 90. More importantly, there was simply no evidence indicating what the parties intended the salary to be, nor would there be any way to decide whether a breach occurred, since no salary was specified. The only claim Cooper asserts in this case is that he was not paid the salary he thinks he should have received.

{¶ 33} A fundamental contract rule "is that a contract which is not binding on one party because it is too indefinite and uncertain as to a material matter, is not binding on the other party thereto." *Messner v. Beals*, 16 Ohio Law Abs. 506, 508 (9th Dist.1934)

(finding no binding contract where salary was not specified). *See also Snell Environmental Group v. Bd. of Commrs. of Warren Cty.*, 12th Dist. Warren No. 64, 1983 WL 4436, *2-3 (Aug. 3, 1983) (contract was unenforceable where parties did not agree to a fee when they contracted); *Cahill v. Owens*, 2016-Ohio-4972, 67 N.E.3d 1242, ¶ 18 (10th Dist.) (no enforceable contract existed due to lack of definite terms and mutual understanding where parties disagreed as to terms and amount of fees); *Allied Erecting & Dismantling Co. v. Uneco Realty Co.*, 146 Ohio App.3d 136, 142-143, 765 N.E.2d 420 (7th Dist.) (no meeting of minds where compensation was not agreed upon); *Ramun v. Ramun*, 7th Dist. Mahoning No. 12 MA 61, 2014-Ohio-4440, ¶ 29 (lack of agreement as to compensation rendered alleged oral contract unenforceable).

**{¶ 34}** In light of the preceding discussion, the trial court did not err in concluding that the parties did not enter into a binding and enforceable contract. Accordingly, the First Assignment of Error is overruled.

### III. Statute of Limitations

**{¶ 35}** Cooper's Second Assignment of Error states that:

The Trial Court Erred When It Found that the Applicable Statute of Limitations Had Ran [Sic].

**{¶ 36}** In addition to finding that no enforceable contract existed, the trial court held that Cooper's actions for promissory estoppel and implied contract were barred by the statute of limitations. Cooper concedes that the six-year statute of limitations in R.C. 2305.07 applies, but argues that he did not truly feel injured until he took his concerns to the City Manager in 2012 or 2013. Alternatively, Cooper contends that the statute of

limitations should be tolled because of the continuing nature of his alleged injury.

**{¶ 37}** R.C. 2305.07 provides for a six-year statute of limitations for actions based on "a contract not in writing, express or implied * * *." Causes of action for breach of contract accrue when the alleged breach causes actual damages to the complaining party. *Kincaid v. Erie Ins. Co.*, 128 Ohio St.3d 322, 2010-Ohio-6036, 944 N.E.2d 207, ¶ 13, *modified on reconsideration on other grounds*, 127 Ohio St.3d 1550, 2011-Ohio-647, 941 N.E.2d 805, ¶ 20; *Columbus Green Bldg. Forum v. State*, 2012-Ohio-4244, 980 N.E.2d 1, ¶ 27 (10th Dist.).

**{¶ 38}** Again, assuming that an oral contract existed and that it was enforceable, the alleged breach would have occurred in early 2008, when Cooper failed to receive the salary raise (whatever that was) to which he says he was entitled. Six years from that time would have been in early 2014. However, Cooper's first action was not filed until June 2015, about a year and a half after the statute of limitations expired. The fact that Cooper did not "think" a problem existed until 2012 or 2013 is irrelevant; in addition, it defies logic.

**{¶ 39}** We also reject Cooper's assertion that the statute of limitations was tolled under the "continuous violation" doctrine. As authority, Cooper cites Ohio Adm. Code 4112-3-01(D)(2), which states that "[i]n cases of recurring or continuing violations, the filing period begins to run anew with each new discriminatory act or with each new day of the continuing violation." This regulation pertains to civil rights violations. *Marok v. Ohio State Univ.*, 10th Dist. Franklin No. 13AP-12, 2014-Ohio-1184, ¶ 26, fn.1.

**{¶ 40}** The Supreme Court of Ohio has stressed that courts are very reluctant to use the continuing violation doctrine outside the Title VII context. *State ex rel. Nickoli v.*

*Erie MetroParks*, 124 Ohio St.3d 449, 2010-Ohio-606, 923 N.E.2d 588, ¶ 31, citing *Natl. Parks Conservation Assn., Inc. v. Tennessee Valley Auth.*, 480 F.3d 410, 416 (6th Cir. 2007). Furthermore, continuing violations are distinguished from "continuing effects of prior violations"; in this context, " ' "[a] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." ' " *Id.* at ¶ 32, quoting *Broom v. Strickland*, 579 F.3d 553, 555 (6th Cir. 2009). (Other citation omitted.) *See also Painesville Mini Storage, Inc. v. Painesville*, 124 Ohio St.3d 504, 2010-Ohio-920, 924 N.E.2d 357, ¶ 3 (in takings case, continual violation doctrine did not apply because "the city did not perform any additional challenged actions after it issued the permit. Every event that occurred thereafter 'was merely a continuation of the effects of that solitary event rather than the occurrence of new discrete acts.' ")

{¶ 41} In rejecting a claim that the continuing violation doctrine should be applied to toll the limitations period for actions based on breach of contract, the Tenth District Court of Appeals quoted a federal case, which said that " 'the plaintiff has not cited any cases, nor is the court aware of any, indicating that Ohio would entertain extending the continuing violation doctrine to breach of contract cases.' " *Marok* at ¶ 26, citing *Vitek v. AIG Life Brokerage*, S.D. Ohio No. 06-cv-615 (Sept. 22, 2008). Our research also has not disclosed any Ohio cases that have extended the continuing violation doctrine to contract actions.

{¶ 42} In arguing that the statute of limitations should have been tolled, Cooper has additionally cited two cases from other jurisdictions. One case applied a continuous violation theory to avoid the effect of the statute of limitations on claims against a lessee for an air-conditioning unit that repeatedly leaked into the apartment below. *1050*

*Tenants Corp. v. Lapidus*, 289 A.D.2d 145, 735 N.Y.S.2d 47 (1st Dept. 2001). The court found that a violation of law resulting in "a continuous condition of nuisance" stated "a continuous and recurring wrong * * *." *Id.* at 147. That is not the situation here, and even though a lease agreement was involved in the cited case, the court's focus was on the alleged continuing nuisance.

{¶ 43} In the other case cited by Cooper, the California Supreme Court rejected application of the continuous violation theory in a situation involving breach of a copier lease agreement. *Aryeh v. Canon Business Sols., Inc.,* 55 Cal.4th 1185, 1199, 151 Cal.Rptr.3d 827, 292 P.3d 871 (2013). However, the court did apply what it called a "continuous accrual" theory, which "supports recovery only for damages arising from those breaches falling within the limitations period." *Id.* Thus, where the plaintiff alleged that the lessor of the copier had breached "the duty not to impose unfair charges in monthly bills," the court held that "each alleged breach must be treated as triggering a new statute of limitations." *Id.* at 1200. The court also noted allegations in the complaint, which it construed as true, that the defendant's "bills periodically included test copy charges that were unfair or fraudulent." *Id.*

{¶ 44} We find no evidence that Ohio recognizes a similar "continual accrual" theory.[4] However, even if Ohio recognized such a theory, the case before us does not involve such circumstances. Here, the alleged damages arose from a single event – the

---

[4] The Supreme Court of Ohio has allowed tolling of the statute of limitations where "an act carried out on the actor's own land causes continuing damage to another's property and the actor's conduct or retention of control is of a continuing nature * * *." *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, 958 N.E.2d 1235, paragraph two of the syllabus. However, this type of conduct did not occur in the case before us; instead, the City's alleged breach of the parties' oral agreement was a single act.

City's purported breach of an oral agreement to promote Cooper. The cause of action arose at that time, not on every payday from January 2008 until Cooper retired in 2016. *See Barnett v. Connecticut Mut. Life Ins. Co.*, 8th Dist. Cuyahoga No. 69253, 1996 WL 284878, *2 (May 30, 1996) (rejecting plaintiff's contention that a separate cause of action arose every year that he did not receive a cost of living benefit adjustment on a disability policy. Instead, the damage arose from a single alleged wrongful act, which was the insurance agent's alleged failure to obtain coverage that included a cost of living increase).

**{¶ 45}** Cooper was clearly aware in early 2008 that he was not receiving the salary he expected, after having been "promoted" to supervisor. However, he failed to file his action for more than six years, and the trial court correctly concluded that his claim was barred under R.C. 2305.07. The Second Assignment of Error, therefore, is overruled.

## IV. Conclusion

**{¶ 46}** All of Cooper's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, J. and TUCKER, J., concur.

Copies mailed to:

David M. Duwel
Timothy G. Pepper
Hon. Mary Katherine Huffman