**[Cite as *Auto-Owners Mut. Ins. Co. v. Mohammed*, 195 Ohio App.3d 224, 2011-Ohio-4009.]**

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| AUTO-OWNERS MUTUAL INS. CO., | : | |
| | : | Appellate Case No. 24298 |
| | : | |
| Appellee, | : | Trial Court Case No. 09-CV-08164 |
| | : | |
| v. | : | |
| | : | (Civil Appeal from |
| MOHAMMED, Appellant; | : | |
| | : | |
| BRANDEWIE et al., | : | Common Pleas Court) |
| | : | |
| Appellees. | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 12th day of August, 2011

. . . . . . . . . . .

Green & Green and Erin B. Moore, for appellee Auto-Owners Mutual Insurance Company.

Bricker & Eckler, L.L.P., and Jeffrey P. McSherry, for appellee Nationwide Property & Casualty Insurance Company.

Bogin, Patterson, Ellis, Slaton & Stump, L.L.P., and James C. Ellis, for appellee Cheryl Brandewie.

Greenebaum, Doll & McDonald, P.L.L.C., and Richard Boydston Jr. for intervener-appellee, Brown Bark II L.P.

Steven E. Hillman, for appellant.

. . . . . . . . . . . . .

FAIN, Judge.

{¶ 1} Defendant-appellant, Marshe D. Mohammed, appeals from a summary judgment rendered against her in a declaratory-judgment action regarding the validity of a land-installment contract for real estate and casualty-insurance coverage for that property. Mohammed contends that the trial court erred by finding that the land-installment contract was invalid and by determining that she thus lacked an insurable interest.

{¶ 2} We conclude that the trial court did err in rendering summary judgment with respect to its determination that there was no coverage for loss to Mohammed's personal property under either the Auto-Owners Mutual Insurance Company policy or the Nationwide Property and Casualty Company policy, but that the trial court did not err in rendering summary judgment in all other respects.

{¶ 3} Accordingly, the judgment of the trial court is reversed in part and affirmed in part, and this cause is remanded for further proceedings consistent with this opinion.

I

{¶ 4} Defendant-appellee Cheryl Brandewie owns real property located at 4516 Philadelphia Drive in Dayton, Ohio. Brandewie has rented the property to others since 1997. In April 2007, Brandewie leased a portion of the property to Mohammed for $1,800 per month. The lease had a termination date of April 2008 but was subject to an automatic month-to-month renewal.

{¶ 5} Sometime in late 2007 or early 2008, Brandewie and Mohammed began discussing the possible sale of the property. Mohammed had an attorney draft a proposed land-installment contract in February or March 2008. Brandewie made some handwritten

revisions, including changing the purchase price and adding a provision that the property be sold "as is," and returned the document to Mohammed's attorney. Mohammed's attorney made the requested revisions and returned it to Brandewie. Brandewie signed the revised version of the contract on March 3, 2008.

{¶ 6} Mohammed disagreed with the revisions and refused to sign the contract. Negotiations ensued. Mohammed wanted to remove the "as is" language and have Brandewie pay for repairs to the roof and plumbing. Mohammed's attorney sent a letter to Brandewie noting that he and Mohammed were working at resolving the differences between the two parties with regard to the contract provisions.

{¶ 7} In the meantime, in March 2008, Mohammed made a lump-sum payment of $15,331.34 to Brandewie in anticipation that a contract would be successfully negotiated. And Brandewie added Mohammed as an additional insured under her homeowner's insurance policy issued by Auto-Owners Mutual Insurance Company.

{¶ 8} In October 2008, Brandewie called Mohammed to state that because they had failed to execute a land-installment contract, rent would be due at the beginning of 2009, since the lump-sum payment would be exhausted on rental payments by the end of the year. Mohammed claimed that the lump-sum payment would cover rent through May 2009. Mohammed also told Brandewie that Brandewie needed to make repairs to the roof before Mohammed would consider signing the land contract. Mohammed claims that she offered to pay for half the cost of repairs if Brandewie would pay the other half.

{¶ 9} On or about October 20, 2008, Mohammed contacted Nationwide Property and Casualty Insurance Company seeking to insure the property. Nationwide subsequently issued

a homeowner's policy to Mohammed. Later, Nationwide advised Mohammed that the homeowner's policy would terminate on December 29, 2008, at 12:01 a.m., because the roof of the property was in poor condition. The roof was never repaired.

{¶ 10} On December 23, 2008, a water leak, which caused drywall and floor damage, occurred in an unoccupied portion of the property. Mohammed reported the water loss to Nationwide. Nationwide eventually denied the claim, because it concluded that Mohammed did not have an insurable interest and the policy was void.

{¶ 11} At approximately 1:00 a.m. on December 29, 2008, the property was completely destroyed by fire. Mohammed notified Brandewie of the fire on that same date. Brandewie then notified Auto-Owners, making a claim for the loss. Mohammed immediately made a claim under the Nationwide policy for damages due to the loss. She made a claim to Auto-Owners in April 2009.

{¶ 12} In September 2009, a signed copy of the "as is" version of the land-installment contract—previously signed by Brandewie—was recorded with the Montgomery County Recorder's Office. It contained Mohammed's signature, with an acknowledgment, before a notary public, dated November 21, 2008. Mohammed admits that she did not send a copy to Brandewie. She also admits that the signed document did not contain the changes she had tried to negotiate with Brandewie.

{¶ 13} It was later determined that the fire was the result of arson caused by gasoline used as an accelerant in the basement of the property. Mohammed, who was the only occupant of the residence at the time of the fire, admitted that she stored containers of gasoline in the basement of the residence. Auto-Owners retained independent investigators to

investigate the fire.   It was determined that Brandewie was not involved.[1]

{¶ 14} Auto-Owners filed this action against Mohammed, Brandewie, and Nationwide, seeking a declaratory judgment that it owed no duty to indemnify Mohammed pursuant to its policy of insurance covering the property.   Mohammed filed an answer, as well as a cross-claim and counterclaim against Auto-Owners and Nationwide, respectively, alleging breach of contract and bad faith.   Mohammed also filed a cross-claim against Brandewie alleging breach of the land-installment contract.

{¶ 15} Brandewie asserted claims against Mohammed, seeking a determination as to the validity of the land-installment contract as well as claims for damage to the property, breach of lease, constructive trust and, alternatively, breach of the land contract.

{¶ 16} Nationwide filed pleadings seeking a declaratory judgment regarding coverage as to all parties, and also filed claims for breach of contract, unjust enrichment, fraud, and falsification against Mohammed.   Later, Brown Bark II, L.P., intervened in the action, as creditors of Brandewie, to assert its judgment-lien rights against the property.[2]

{¶ 17} The bad-faith claims were bifurcated from the coverage claims.   Auto-Owners and Nationwide filed motions for summary judgment against Mohammed on the coverage issues.   Nationwide also sought summary judgment on the issues of fraud, falsification, and unjust enrichment.   Brandewie also filed a motion for partial summary judgment on the land-contract issues.   The trial court rendered summary judgment in favor of Brandewie upon

---

[1]   Nationwide conducted an investigation of the claims made by Mohammed.   As a result of that investigation, Mohammed was indicted for insurance fraud in Montgomery County, Ohio.   She entered a plea of no contest and was found guilty on April 28, 2010.

[2]   Brandewie and Brown Bark eventually reached an agreement on the lien claims, and an agreed order was entered accordingly.

a finding that Brandewie and Mohammed had not entered into a valid contract. The trial court additionally rendered summary judgment in favor of Auto-Owners and Nationwide, finding that they owed no coverage to Mohammed. Specifically, the trial court found that because the land contract was not valid, Mohammed did not have an insurable interest in the property and was thus owed no coverage by Nationwide or Auto-Owners. The trial court overruled Nationwide's motion with regard to the claims for fraud, falsification, or unjust enrichment, finding that Nationwide had failed to establish the lack of a genuine issue of material fact. The trial court certified, under Civ.R. 54(B), that there was no just reason for delay with respect to the summary judgments it rendered against Mohammed.

{¶ 18} From the summary judgments rendered against her, Mohammed appeals.

II

{¶ 19} Mohammed's first assignment of error states:

{¶ 20} "The trial court erred by designating the order of August 24, 2010 as final appealable order [sic] pursuant to Civ.R. 54(b) in that there were unresolved issues."

{¶ 21} Mohammed contends that the order from which she appeals should not have been designated a final, appealable order. In support, she argues that the trial court did not decide Nationwide's claims of fraud, falsification, and unjust enrichment, nor did it decide Brandewie's claims for breach of lease, constructive trust, and damage to property. She also contends that Brown Bark's claims remain pending as well.

{¶ 22} "R.C. 2505.02(B)(2) provides that an order is a final order that may be reviewed when it is '[a]n order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment.' Declaratory-judgment proceedings

are special proceedings, and the right to insurance coverage involves a substantial right. Furthermore, where claims remain pending, the order is appealable if the trial court also complies with Civ.R. 54(B) by noting that no just cause for delay exists." *Care Risk Retention Group v. Martin*, 191 Ohio App.3d 797, 2010-Ohio-6091, ¶ 98.

**{¶ 23}** We first note that the claims asserted by Brown Bark have been resolved by agreed order as noted in Part I above. We next note that this case involved a declaratory-judgment action regarding insurance coverage that necessarily depended upon the determination whether the land-installment contract was valid. The trial court made a determination of those issues but did not resolve Brandewie's and Nationwide's remaining claims. However, the trial court appended the appropriate Civ.R. 54(B) language to the declaratory judgment. Therefore, this judgment constitutes a final, appealable order, and we have jurisdiction to review it.

**{¶ 24}** Mohammed's first assignment of error is overruled.

### III

**{¶ 25}** We next address Mohammed's fourth assignment of error, which states as follows:

**{¶ 26}** "The trial court erred when it found that the land installment contract between appellant Mohammed and appellee Brandewie was void."

**{¶ 27}** Mohammed contends that the trial court erroneously concluded that the parties failed to execute a valid land-installment contract and thus erred by rendering summary judgment in favor of Brandewie. In support, she points to the fact that a document was signed by both parties and was recorded with the county.

{¶ 28} This court has noted:

{¶ 29} "In its most basic form, a contract is generally defined as 'a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.' * * *

{¶ 30} "A meeting of the minds as to the essential terms of the contract is a requirement for enforcing the contract. * * * 'In order for a meeting of the minds to occur, both parties to an agreement must mutually assent to the substance of the exchange.' * * * The parties must have a distinct and common intention that is communicated by each party to the other." *Champion Gym & Fitness, Inc. v. Crotty*, 178 Ohio App.3d 739, 2008-Ohio-5642, ¶ 11-12.

{¶ 31} In order to create a valid contract and to establish a meeting of the minds, there must be " 'an offer on the one side and an acceptance on the other.' " *Gutbrod v. Schuler*, Cuyahoga App. No. 94228, 2010-Ohio-3731, ¶ 17. An offer may be terminated by rejection on the part of the offeree, the lapse of time, the occurrence of a condition set forth in the offer as resulting in termination, or revocation by the offeror. 1 Restatement of the Law, Contracts (1932) 44, Section 35. "Where an offer is terminated in one of these ways a contract cannot be created by subsequent acceptance." Id.; *Garrison v. Daytonian Hotel,* 105 Ohio App.3d 322, 325.

{¶ 32} In this case, the trial court found that there was no meeting of the minds sufficient to create a contract. The trial court further found that Brandewie revoked her offer

by informing Mohammed that she needed to resume paying rent, since no agreement had been reached.   We agree.

**{¶ 33}** It is undisputed that Mohammed immediately rejected the "as is" contract signed by Brandewie, which is corroborated by the fact that her attorney sent Brandewie a letter indicating that he was working with his client to resolve the issues that Mohammed could not agree upon.   After the communication from Mohammed's attorney, the parties attempted to reach an agreement, but Mohammed insisted that repair of the roof had to be completed.   Furthermore, even though Mohammed eventually signed the "as is" contract on November 21, 2008—nine months after Brandewie had signed the document—she admitted that she did not agree with the terms contained in that document and she believed that other terms had either been agreed upon or were still being negotiated.   During the interim, Brandewie informed Mohammed that the money previously paid was being exhausted and that further rental payments would be due by the end of the year.   Mohammed did not disagree with the need to pay rent, since she had continued to live in the residence; but she did argue that the rental payments would not become due until May 2009, since that was the date the lump-sum payment to Brandewie would have been exhausted.   Finally, the payment amount and schedule set forth in the "as is" contract was based upon a signing date and annual payments ensuing as of March 2008.   Since Mohammed did not sign until November, the payment terms of the contract could not be fulfilled as of the time that Mohammed signed the contract.

**{¶ 34}** "Summary judgment should be granted only if no genuine issue of material fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can

come to but one conclusion, which is adverse to the nonmoving party." *Abroms v. Synergy Bldg. Sys.*, Montgomery App. No. 23944, 2011-Ohio-2180, ¶ 36, citing Civ.R. 56; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66. "An appellate court reviews summary judgments de novo, meaning that we review such judgments independently and without deference to the trial court's determinations." Id., citing *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588.

**{¶ 35}** We agree with the trial court that the parties did not enter into an enforceable land-installment contract. The above-cited conduct neither constitutes acceptance of the "as is" contract nor the formation of a new contract. There was no acceptance of the offer, and therefore no meeting of the minds. The fact that Mohammed signed the contract—the terms of which she admitted she still did not agree to—eight months after she had rejected it did not revive the previously rejected offer and did not result in an enforceable contract.

**{¶ 36}** The fourth assignment of error is overruled.

IV

**{¶ 37}** Mohammed's second assignment of error is as follows:

**{¶ 38}** "The trial court erred when it granted a summary judgment when the material facts of this case were in dispute. Thus the granting of a summary judgment was inappropriate and should have been denied."

**{¶ 39}** In this assignment of error, Mohammed claims that the trial court erred by rendering summary judgment in favor of Brandewie, Nationwide, and Auto-Owners.

**{¶ 40}** With regard to Brandewie, Mohammed again raises her claim that the trial court erred in concluding that the land contract was invalid. For the reasons set forth in part

III, we find this argument to be without merit.

{¶ 41} Mohammed next contends that the trial court erred in rendering summary judgment in favor of Nationwide and Auto-Owners. In support, she argues that the land contract was valid and that she therefore had an insurable interest in the property.

{¶ 42} This court has noted that an insurable interest in property arises when a person " 'would profit by or gain some advantage by its continued existence and suffer some loss or disadvantage by its destruction.' " *Gabel v. Richley*, 101 Ohio App.3d 356, 366, citing 3 Couch on Insurance 2d (Rev.Ed.1984) 36, Section 24:13; *Phillips v. Cincinnati Ins. Co.* (1979), 60 Ohio St.2d 180. "Clearly, a property owner has an insurable interest in that property, and it is generally recognized that co-owners have separate insurable interests in property to the extent of their interests in the property." *Gable* at 366. However, "[a]ctual ownership is not an essential of insurable interest; all that is required is an interest in the preservation of the subject matter." 57 Ohio Jurisprudence 3d (2005), Insurance, Section 439.

{¶ 43} In this case, Mohammed had no ownership rights in the subject real estate for the reasons set forth in part III, since her only claimed interest in the property arises from a proposed contract that was never agreed to.

{¶ 44} We note that Mohammed paid Brandewie the sum of approximately $15,000 as a down payment for the purchase of the property under the proposed contract that never came into existence. That money was subject to a constructive trust. When the contract for which it was intended as a down payment never came into existence (because there was no meeting of the minds), Brandewie properly applied the money as rent due between March 2008 and the loss of the property in December. To the extent that any of that money may have remained at

the time of the loss, Mohammed's recourse would be against Brandewie, not the insurers of the real property, since Mohammed had an interest in the trust corpus, but not in the real property.

{¶ 45} Notwithstanding Mohammed's lack of ownership rights in the real estate, she had an insurable interest in her personal property located in the residence and destroyed by the fire. Both the Nationwide and Auto-Owners policies provide coverage for Mohammed's personality. Part C of both policies states: "We cover personal property owned or used by an insured at the residence premises."

{¶ 46} Mohammed was prosecuted for insurance fraud because there was evidence that the property she claimed to have been destroyed was not in the debris. Indeed, Nationwide seems to rely, in part, upon this fact in arguing in support of the summary judgment in its favor. But Mohammed pleaded no contest to that charge; therefore, her conviction cannot be used to support motions for summary judgment in a separate, civil proceeding. "Crim.R. 11(A) provides that a defendant may plead no contest in a criminal matter." *Elevators Mut. Ins. Co. v. J. Patrick O'Flaherty's, Inc*., 125 Ohio St.3d 362, 2010-Ohio-1043, ¶ 12. " 'The plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment, information, or complaint, *and the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding.'* " (Emphasis added.) Id., quoting Crim.R. 11(B)(2). "Evid.R. 410(A)(2) echoes this same principle. A plea of no contest or the equivalent plea from another jurisdiction 'is not admissible in any civil or criminal proceeding against the defendant who made the plea.' " Id.

**{¶ 47}** The trial court erred by rendering summary judgment, as a matter of law, and holding that the lack of a valid land contract precluded Mohammed from asserting an insurable interest in her personal property.

**{¶ 48}** Mohammed's second assignment of error is sustained with respect to that part of the summary judgment finding no coverage for personal property under the Auto-Owners and Nationwide insurance policies, and overruled with respect to that part of the summary judgment finding no other coverage under those policies.

V

**{¶ 49}** Mohammed's third assignment of error provides:

**{¶ 50}** "The trial court erred in sustaining the plaintiff/appellee's motion for summary judgment when it dismissed the defendant/appellant's claim of bad faith."

**{¶ 51}** Mohammed contends that her claim of bad faith was not rendered moot by the trial court's denial of coverage under Nationwide's policy. In support, she argues that the tort of bad faith does not depend upon a contract and therefore should not have been predicated upon the dismissal of the "contract claim." She further argues that Nationwide was required to conduct a "complete and thorough investigation" prior to denying her claim.

**{¶ 52}** As noted above, we conclude that Mohammed was not an owner of the real estate. Therefore, she had no insurable interest in any portion of the real estate. Although, for the reasons set forth in part IV, the trial court erred in rendering summary judgment with respect to coverage for casualty loss to Mohammed's personal property under the Nationwide policy, we find no bad faith on Nationwide's part. Mohammed has never differentiated in her arguments between the personal-property coverage under the policy and other coverages under

the policy. Furthermore, the suspicious circumstances surrounding the fire that allegedly destroyed Mohammed's personal property militates against any finding of bad faith on Nationwide's part.

**{¶ 53}** We conclude that the trial court did not err in rendering summary judgment on the bad-faith claim.

**{¶ 54}** Mohammed's third assignment of error is overruled.

VI

**{¶ 55}** Mohammed's second assignment of error having been sustained with respect to that part of the summary judgment rendered against her declaring that she had no coverage for casualty loss to her personal property under either the Auto-Owners or Nationwide insurance policies; her second assignment of error having been overruled in all other respects; and her other assignments of error having been overruled, that part of the summary judgment concerned with the insurance coverages for Mohammed's personal property is reversed; the summary judgment is affirmed in all other respects; and this cause is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part

and reversed in part,

and cause remanded.

. . . . . . . . . . . .

GRADY, P.J., and FROELICH, J., concur.