[Cite as *Dicken v. Statutory Agent for Allstate Ins. Co.*, 2013-Ohio-3103.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| ELLEN C. DICKEN | : | **JUDGES:** |
|  | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellant | : | Hon. Sheila G. Farmer, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 12-CA-127 |
| STATUTORY AGENT FOR | : |  |
| ALLSTATE INSURANCE CO., ET AL | : |  |
|  | : | O P I N I O N |
| Defendants-Appellees | | |

CHARACTER OF PROCEEDING:      Civil appeal from the Fairfield County Court
of Common Pleas, Case No. 2010 CV
01400

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      July 12, 2013

APPEARANCES:

For Plaintiff-Appellant      For Defendants-Appellees

DANIEL FRUTH      RICK MARSH
CHARLES M. ELSEA      Lane, Alton & Horst, LLC
109 N. Broad Street, Suite 200      Two Miranova Place, Suite 500
Box 130      Columbus, OH 43215
Lancaster, OH 43130-0130

*Gwin, P.J.*

{¶1} Appellant appeals the August 31, 2011 judgment entry of the Fairfield County Common Pleas Court denying her motion for summary judgment and the October 25, 2012 judgment entry finding appellee was not in breach of contract and finding for appellee on an estoppel claim.

*Facts & Procedural History*

{¶2} In May of 2005, appellant Ellen Dicken f.k.a. Hamilton and her husband Rick, who subsequently passed away in 2008, procured a homeowner's insurance policy with appellee Allstate Insurance Company ("Allstate") through her local agent Rutter Insurance Company. The policy had an initial period of May 5, 2005 to May 5, 2006. The named insured on the policy was listed as Rick Hamilton and the location of the property was listed as 8060 State Route 312, Logan, Ohio. AMC Mortgage Services, Inc. ("AMC Mortgage") was listed as the mortgagee on the insurance policy. Appellant testified she paid the insurance on a monthly basis and paid the monthly premium in person either by cash or check. When she would bring the payment in each month, an employee at the local agency would write her a handwritten receipt. Appellant testified she had previously been late on her insurance payments, but always paid the bill within the grace period when she received the cancellation notice stating it had to be paid by a certain date.

{¶3} Appellant's payment for her October 2006 coverage on the homeowner's insurance policy was due on September 5, 2006. On September 15, 2006, appellee issued appellant a Homeowner's Policy Cancellation Notice. The notice stated, in pertinent part, "If you want your insurance to continue and do not want it to cancel,

please make sure we receive the Minimum Amount Due by the end of the day (midnight) on October 4, 2006 or your policy will cancel at 12:01 a.m. Standard Time on October 5, 2006." The minimum amount due was stated at $107.93 and the "pay in full" amount was $407.13 to pay the full balance due on the May 5, 2006 to May 5, 2007 policy period. Appellant testified she never received the notice of cancellation, though she had no problems getting her mail and the notice was addressed correctly. Appellant stated she received all correspondence from appellee except for the September 15, 2006 notice of cancellation. Kathy Collard ("Collard"), a senior field support representative for Allstate and an Allstate employee for thirty-five years, reviewed the records in appellee's account to determine if the notice of cancellation had been returned to Allstate. The notice had not been returned to them.

{¶4} On October 12, 2006, appellant's home and personal belongings were destroyed in an accidental fire caused by an unattended kerosene heater. Appellant testified she knew she had made the September 2006 homeowner's insurance payment. Appellant stated she called appellee's claims reporting number the night of the fire and that she called her local insurance agent, Marla Rutter ("Mrs. Rutter"), the morning of October 13, 2006. Mrs. Rutter disputes appellant called her the morning of October 13th and indicates the first she knew of the fire was when appellant showed up at her office the day after the fire and attempted to make the overdue premium payment. Mrs. Rutter testified when she attempted to put the payment into the system, she noticed it was an overdue payment and the policy had canceled. Mrs. Rutter stated after she attempted to put the payment into the system, appellant informed her about the fire and asked her for the Allstate claims reporting phone number. Mrs. Rutter told

appellant she would have to check with the district manager to see if she could accept the late payment. Appellee told Mrs. Rutter to refuse to accept the late payment. Mrs. Rutter testified she later mailed the check to appellant after appellant refused to take it back on October 13th and that she did not give appellant a receipt on October 13th. Appellant testified Mrs. Rutter accepted the check and gave her a handwritten receipt for the check. Appellant again attempted to pay the premium on October 26, 2006, but Mrs. Rutter refused the check.

**{¶5}** Collard testified it is appellee's policy to allow a lienholder to protect their interest in the property by giving them a window of opportunity to pay the premium so the lienholder's interest is protected even after the policy is canceled as to the homeowner. Accordingly, on October 10, 2006, appellee issued a Homeowner's Policy Cancellation Notice to the lienholder on appellee's home, AMC Mortgage. The notice stated, in pertinent part, "If you want your insurance to continue and do not want it to cancel, please make sure we receive the Minimum Amount Due by the end of the day (midnight) on October 29, 2006 or your policy will cancel at 12:01 a.m. Standard Time on October 30, 2006." Again the minimum payment was stated at $107.93 and with a "pay in full" amount of $407.13. AMC Mortgage made a payment to appellee on October 26, 2006 in the amount of $407.13. Collard testified the mortgage holder has an interest in the property to the extent of the mortgage only. She further stated that, at the time of the fire, appellee's policy was not in effect as to appellant because it had lapsed on October 5, 2006.

**{¶6}** Appellee issued a Reinstatement Notice on October 31, 2006 to AMC Mortgage with a copy to appellant that stated:

"Your policy was cancelled effective at 12:01 a.m. Standard Time on October 5, 2006. Your policy was reinstated at 12:01 a.m. Standard Time on October 30, 2006. A payment was credited to your policy in the amount of $407.13. If this payment was by check, draft, or other remittance which is not honored upon presentation to your financial institution, this notice is void, and your policy cancelled as of 12:01 a.m. Standard Time on October 5, 2006."

**{¶7}** Jimmy Rutter ("Mr. Rutter"), the local insurance agent, testified about the principle of insurable interest and stated for there to be an insurable interest, a home has to actually exist. In this case, once the home burned down, there was nothing left of the structure to insure after October 12, 2006. Mr. Rutter went through all the receipt books in the office after the fire and determined appellant had not paid the premium due September 5, 2006.

**{¶8}** Appellant proffered a claim to appellee and appellee refused the claim. AMC Mortgage did not make a claim under appellee's policy. Appellant testified that after the fire, SafeCo. Insurance Company notified her there was a blanket insurance policy on the loan that would pay off the property. Appellant learned that AMC Mortgage took out their own policy on appellant's property and this policy, held by SafeCo., paid off appellant's mortgage of $78,000. In addition, SafeCo. issued appellant a check for $38,000. On November 15, 2006, appellee refunded to appellant the amount of $39.00, an amount Collard testified was a lapsed credit which

represented the portion of the premium when the policy lapsed from October 5, 2006 to October 30, 2006.

{¶9} Appellant filed a complaint on November 5, 2010 against appellee alleging breach of contract, declaratory judgment, promissory estoppel, and bad faith. Appellant alleged appellee insured her losses related to the fire per hazard insurance contract. Appellee maintained it did not owe coverage to appellant because she did not pay her premium and her policy was canceled as to her interest at the time of the fire. Both appellant and appellee filed motions for summary judgment. The trial court denied both appellant and appellee's motions for summary judgment. Appellee's motion to bifurcate the claims of bad faith and punitive damages was granted by the trial court. A trial to the court was held on January 24, 2012. On March 31, 2012, the trial court issued a judgment entry finding in favor of appellee, concluding the insurance policy was not in effect at the time of the fire and thus appellee was not in breach of contract. After this court dismissed appellant's first appeal because the entries at issue were not final appealable orders, the trial court issued a judgment entry on October 25, 2012, disposing of all claims and finding that appellee was entitled to judgment in its favor on the claim of breach of contract, bad faith, the declaratory judgment action, and estoppel.

{¶10} Appellant appeals the August 31, 2011 entry denying her motion for summary judgment and the October 25, 2012 judgment entry finding appellee was not in breach of contract and finding for appellee on her estoppel claim. She raises the following assignments of error on appeal:

**{¶11}** "I.THE TRIAL COURT ERRED AS A MATTER OF LAW, IN DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, VIA ITS JUDGMENT ENTRY FILED AUGUST 31, 2011.

**{¶12}** "II. THE TRIAL COURT ERRED BY GRANTING JUDGMENT IN FAVOR OF DEFENDANT/APPELLEE ALLSTATE INSURANCE CO. AND AGAINST PLAINTIFF/APPELLANT, ELLEN C. DICKEN VIA ITS JUDGMENT ENTRY FILED OCTOBER 25, 2012 ON HER CLAIM FOR BREACH OF CONTRACT.

**{¶13}** "III. THE TRIAL COURT ERRED BY GRANTING JUDGMENT IN FAVOR OF DEFENDANT/APPELLEE ALLSTATE INSURANCE CO. AND AGAINST PLAINTIFF/APPELLANT ELLEN C. DICKEN VIA ITS JUDGMENT ENTRY FILED OCTOBER 25, 2012 ON HER CLAIM FOR PROMISSORY ESTOPPEL."

I.

**{¶14}** Civ.R. 56 states, in pertinent part:

"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that

party being entitled to have the evidence or stipulation construed mostly strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

{¶15} A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 424 N.E.2d 311 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning-Ferris Inds. of Ohio, Inc.*, 15 Ohio St.3d 321, 474 N.E.2d 271 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 733 N.E.2d 1186 (6th Dist. 1999).

{¶16} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987). This means we review the matter de novo. *Doe v. Shaffer*, 90 Ohio St. 3d 388, 2000-Ohio-186, 738 N.E.2d 1243.

{¶17} The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrates absence of a genuine issue of fact on a material element of the non-moving party's claim. *Drescher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996). Once the moving party meets its initial burden, the burden shifts to the non-

moving party to set forth specific facts demonstrating a genuine issue of material fact does exist. *Id.* The non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary materials showing a genuine dispute over material facts. *Henkle v. Henkle*, 75 Ohio App.3d 732, 600 N.E.2d 791 (12th Dist. 1991).

{¶18} Appellant argues the trial court erred in denying her motion for summary judgment. We disagree. Appellant contends it was an "undisputed fact" that the policy was paid in full by appellant and accepted in full by appellee. However, when the trial court denied the motion for summary judgment, several disputed facts existed surrounding the payment and potential lapse of the policy. For example, while appellant testified in her deposition that the policy didn't lapse, Mrs. Rutter testified in her deposition the policy did lapse for the period between the cancellation date and the payment by AMC. In addition, appellant testified in her deposition she did not receive the cancellation notice and had in fact paid the premium while Mrs. Rutter stated in her deposition appellant had not paid the premium due September 5th. Accordingly, genuine issues of material fact were disputed and summary judgment on behalf of appellant was not warranted pursuant to Civil Rule 56.

{¶19} Further, a majority of the arguments advanced by appellant in support of her argument that the trial court erred in denying her motion for summary judgment related to the trial testimony of Collard and appellant. However, this testimony was not Rule 56 evidence before the trial court at the time the trial court ruled on the motions for summary judgment and thus the trial court did not err in not considering this testimony at the time it ruled on the motions for summary judgment.

**{¶20}** Appellant's first assignment of error is overruled.

II.

**{¶21}** The trial court conducted a bench trial in this case.  As an appellate court, we are not fact finders; we neither weigh the evidence nor the credibility of witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base his or her judgment.  *Peterson v. Peterson*, 5th Dist. No. CT2003-0049, 2004-Ohio-4714, citing *Cross Truck v. Jeffries*, 5th Dist. No. CA-5758, 1982 WL 2911 (Feb. 10, 1982).  Questions of law are reviewed de novo.  *Erie Ins. Co. v. Paradise*, 5th Dist. No. 2008CA00084, 2009-Ohio-4005, ¶ 12.

**{¶22}** Appellant argues the trial court erred in finding appellee did not breach its insurance contract with appellant.  We disagree.

**{¶23}** Pursuant to the terms of the policy, appellee had a right to cancel the policy for non-payment by mailing a Notice of Cancellation to appellant at her mailing address ("Our mailing the notice of cancellation to you will be deemed proof of notice") and appellee was required to give appellant ten (10) days notice before canceling the policy pursuant to the language in the policy stating if cancellation is for "non-payment of premium, we will give you at least ten (10) days notice."

**{¶24}** Despite appellant's assertion that she never received the notice of cancellation and made her September 2006 payment, the trial court found appellant did not make the payment due in September of 2006 and that a notice of cancellation was sent out by appellee canceling appellant's policy for non-payment of premium as of October 5, 2006.  Based on appellant's testimony that she received all correspondence from appellee except the notice of cancellation, Collard's testimony that appellee's

records did not show any mail returned to them for non-delivery, Collard's testimony that appellee's records did not show a payment for September of 2006, Mrs. Rutter's testimony that the September 2006 premium was not paid when appellant came into her office on October 13, 2006, and Mr. Rutter's testimony that he went through the receipt books and could find no record of appellant's September 2006 payment, we find there is relevant, competent, and credible evidence to support the trial court's finding that appellant did not pay the September 2006 premium and that appellee sent appellant a notice of cancellation on September 15, 2006.

{¶25} The notice of cancellation clearly states the policy would be canceled at 12:01 a.m. Standard Time on October 5, 2006 if appellee did not receive a minimum payment of $107.33 by this date. Appellee did not receive the minimum payment by October 5, 2006. Thus, pursuant to the cancellation provision in the policy, the policy was canceled on October 5, 2006 and was not in effect as to any interest of appellant on October 12, 2006, the date of the fire. Further, appellant's attempts to tender the minimum payment after the October 12, 2006 date do not provide coverage for the loss as the policy specifically states in the Conditional Reinstatement portion:

> "If we mail a cancellation notice because you did not pay the required premium when due and you then tender payment by check, draft, or other remittance which is not honored upon presentation, your policy will terminate on the date and time shown on the cancellation notice and any notice we issue which waives the cancellation or reinstates coverage is void. This means Allstate will not be liable under this policy for claims or damages after the date and time indicated on the cancellation notice."

**{¶26}** Appellant asserts the October 26, 2006 payment by AMC Mortgage to appellee of the full policy premium of $407.13 kept the policy in effect on the date of the fire as to both AMC Mortgage and appellant.

**{¶27}** "It is well established that to recover under an insurance policy for fire loss to property, an insured must have an insurable interest in the property at the time of the loss." *Patteron-Leitch Co. v. Ins. Co. of North Am.*, 366 F.Supp. 749, 752 (N.D. Ohio 1973), citing *Stauder v. Assoc. Gen. Fire Co.*, 105 Ohio App. 105, 151 N.E.2d 583 (9th Dist. 1957). An insurable interest in property arises when a person "would profit by or gain some advantage by its continued existence and suffer some loss or disadvantage by its destruction." *Auto-Owners Mut. Ins. Co. v. Mohammed*, 195 Ohio App.3d 224 at ¶ 42, 2011-Ohio-4009, 959 N.E.2d 568 (2d Dist. 2011). If one does not have an insurable interest in the subject matter of the insurance, the policy is void. *Phillips v. Cincinnati Ins. Co.*, 60 Ohio St.2d 180, 181, 398 N.E.2d 564.

**{¶28}** Per appellee's standard procedure, they issued a notice of cancellation to AMC Mortgage on October 10, 2006, prior to the fire, stating if they wanted the insurance to continue, the minimum amount was due by midnight on October 29, 2006, or the policy would cancel. AMC Mortgage made the payment on October 26 in an attempt to keep the coverage in effect to protect their interest in the property, i.e. their mortgage. The reinstatement notice by appellee states the policy was "cancelled effective at 12:01 a.m. Standard Time on October 5, 2006 and reinstated on October 30, 2006." The Ohio Supreme Court has stated that "when an insurance policy provides that acceptance of a delinquent payment will reinstate the policy, the acceptance of the late payment does not revive the original policy. *State Farm Mut. Auto Ins. Co. v. Ingle*,

180 Ohio App.3d 201 at 207.  Thus, the policy was canceled October 5, 2006 and was not in effect at the time of the fire on October 12, 2006.

{¶29} Further, at the time AMC Mortgage made the payment on October 26, 2006 and the policy was reinstated on October 30, 2006, AMC Mortgage was divested of any pecuniary interest in the property because the fire destroyed the home on October 12, 2006.  Since the home was destroyed by the fire, AMC Mortgage would not, on October 26 or October 30, profit or gain some advantage by its continued existence and would not suffer any loss by the property's destruction because there was nothing left of the structure to insure after October 12, 2006.  For AMC Mortgage to have an insurable interest on the date of payment or reinstatement, the home would have had to physically exist.  Accordingly, any insurable interest AMC Mortgage had in the home was extinguished at the time of the fire and appellant cannot, through their payment, recover under insurance policy because "if one does not have an insurable interest in the subject matter of the insurance, the policy is void."  *Phillips v. Cincinnati Ins. Co.*, 60 Ohio St.20 180, 181, 398 N.E.2d 564.

{¶30} We find the insurance policy was not in effect as to any interest of appellant on October 12, 2006.  Further AMC Mortgage's attempt to reinstate the policy was void because they had no insurable interest at the time they tendered payment.  Accordingly, appellee did not breach its contract and the trial court did not err in rendering judgment for appellee on appellant's breach of contract claim.  Appellant's second assignment of error is overruled.

III.

{¶31} Appellant argues the trial court erred in finding for appellee on appellant's claim for promissory estoppel and wavier because appellee induced, accepted, and credited payment in full on appellant's policy from AMC Mortgage with knowledge of the loss.  We disagree.

{¶32} Promissory estoppel is an equitable doctrine for preventing the harm resulting from reasonable reliance upon false representations.  *GGJ, Inc. v. Tuscarawas Cty. Bd. of Commrs.*, 5th Dist. No. 2005AP070047, 2006-Ohio-2527, citing *Karnes v. Doctors Hosp.*, 51 Ohio St.3d 139, 142, 555 N.E.2d 280 (1990).  The party asserting promissory estoppel bears the burden of proving, by clear and convincing evidence, all of the elements of the claim.  *In re Estate of Popov*, 4th Dist. No. 02CA26, 2003-Ohio-4556.  The elements necessary to establish a claim for estoppel are: (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be reasonable and foreseeable; and (4) the party claiming estoppel must be injured by the reliance.  *Schepflin v. Sprint-United Telephone of Ohio*, 5th Dist. No. 96-CA-62-2, 1997 WL 1102026 (April 29, 1997), citing *Stull v. Combustion Eng.,Inc.*, 72 Ohio App.3d 553, 557, 595 N.E.2d 504 (3d Dist. 1991).

{¶33} Acceptance of late premiums by the insurer may constitute waiver.  *Starcher v. Reserve Ins. Co.*, 68 Ohio App.2d 176, 428 N.E.2d 461, citing *Ohio Farmers Ins. Co. v. Wilson*, 70 Ohio St. 354, 359, 72 N.E. 715 (1904).  Waiver is the voluntary and intentional relinquishment of a known right, claim, or privilege.  *State Farm Mut. Auto Ins. v. Ingle*, 68 Ohio App.2d 176 at 179-180.  However, "acceptance of a late payment after loss does not, by itself, result in waiver.  Rather, the conduct of the

insurer must indicate that it intended to waive the lateness of the payment. Such conduct might include retention of the portion of the premium for the period of time that the policy had been cancelled." *State Farm Mut. Auto Ins. v. Ingle*, 180 Ohio App.3d 201 at 208.

{¶34} Appellant argues appellee induced AMC Mortgage and/or appellant to pay the balance of the policy premium for their promise to continue coverage with the notices of cancellation sent to appellant and AMC Mortgage. Both notices of cancellation were sent prior to the fire of October 12, 2006. Further, appellant did not attempt to tender payment on either the balance or the minimum payment until after the policy expired on October 5, 2006. Therefore, appellee did not induce appellant into paying the balance of the premium and no promise of continued coverage after October 5, 2006 was made to appellant. In fact, appellee refunded to appellant the $39.00 amount of the overdue premium that would have been used to cover the time period when the policy had been canceled and the balance paid by AMC Mortgage was not applied retroactively to avoid a gap in coverage.

{¶35} The entity that actually paid the balance of the premium was AMC Mortgage. AMC Mortgage is not a plaintiff in this case and makes no argument that appellee is estopped from denying them payment on the policy or that appellee waived the late payment by accepting their October 26th payment.

{¶36} Accordingly, the trial court did not err in granting judgment for appellee on appellant's claim for promissory estoppel. Appellant's third assignment of error is overruled.

**{¶37}** Based on the foregoing, Appellants Assignments of Error I, II, and III are overruled and the judgment of the Fairfield County Court of Common Pleas is affirmed.


By Gwin, P.J., and

Farmer, J., concur;

Hoffman, J., concurs separately


_____
HON. W. SCOTT GWIN


_____
HON. WILLIAM B. HOFFMAN


_____
HON. SHEILA G. FARMER


WSG:clw 0613

*Hoffman, J., concurring*

{¶38} I concur in the majority's analysis and disposition of Appellant's first and third assignments of error.[1]

{¶39} I further concur in the majority's disposition of Appellants second assignment of error. My only disagreement is with the majority's conclusion AMC Mortgage did not have an insurable interest in the property on the date of payment.

{¶40} At the time Appellee sent AMC Mortgage the Mortgage Notice of Cancellation, the fire had not yet occurred. That notice provided coverage would "continue", as opposed to being reinstated, if payment was received before October 30, 2006, I find the intervening fire does not operate to divest AMC Mortgage of an insurable interest because its subsequent payment caused the policy to continue in effect, rather than lapse and then become reinstated.

{¶41} Nonetheless, I concur in the decision to overrule Appellant's second assignment of error because the notice to AMC Mortgage does not inure to the benefit of Appellant. The fact the insured receive a copy of the notice sent to AMC Mortgage does not continue his policy covering the property, which the majority finds terminated on October 5, 2006.

_____

HON. WILLIAM B. HOFFMAN

---

[1] My only disagreement, with the majority's discussion of the first assignment of error is its statement the parties disagreement as to whether the policy lapsed is an example of a disputed fact. I find the example represents a dispute of law, not a dispute of fact, and does not prevent summary judgment on that limited basis.

[Cite as *Dicken v. Statutory Agent for Allstate Ins. Co.*, 2013-Ohio-3103.]

IN THE COURT OF APPEALS FOR FAIRFIELD COUNTY, OHIO

FIFTH APPELLATE DISTRICT

ELLEN C. DICKEN                          :
                                         :
            Plaintiff-Appellant          :
                                         :
                                         :
-vs-                                     :        JUDGMENT ENTRY
                                         :
STATUTORY AGENT FOR                      :
ALLSTATE INSURANCE CO., ET AL            :
                                         :
                                         :
            Defendants-Appellees         :        CASE NO. 12-CA-127


     For the reasons stated in our accompanying Memorandum-Opinion, the judgment of

the Fairfield County Court of Common Pleas is affirmed.  Costs to appellant.


                                              _____
                                              HON. W. SCOTT GWIN


                                              _____
                                              HON. WILLIAM B. HOFFMAN


                                              _____
                                              HON. SHEILA G. FARMER